UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JOHN D. ANDERSON, JR.,
    Petitioner

v.

    CIVIL NO. L-07-234
    CRIM. NO. L-00-033

UNITED STATES OF AMERICA,
    Respondent

\*\*\*\*\*\*\*

MEMORANDUM

Now pending is pro se petitioner John D. Anderson, Jr.'s motion to vacate his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will, by separate Order of even date, GRANT a hearing to resolve one of Anderson's claims, APPOINT counsel for Anderson, and DENY the remaining claims.[1]

I.    **Background**

This case began with the investigation of several grocery stores in Baltimore City. From these stores, Anderson and several family members sold chemical diluents, gelatin capsules, glass vials, and other tools of the drug trade in addition to ordinary grocery items.

On January 27, 2000, a federal grand jury indicted Anderson and thirteen other co-defendants in a multi-count indictment. On December 12, 2000, after a twenty-eight day trial period, the jury convicted all Defendants on Count One of the Indictment, which charged conspiracy to (1) knowingly sell and offer for sale drug paraphernalia, in violation of the drug paraphernalia statute, see 21 U.S.C. § 863(a)(1); and (2) knowingly aid and abet the distribution

---

[1] Because the facts and legal arguments regarding the claims that the Court is denying are adequately set forth in the existing record, an evidentiary hearing on those claims is not necessary. See United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

1

and possession with intent to distribute a controlled substance, in violation of conspiracy and drug laws, see 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846. The jury also convicted Anderson of: (1) conspiracy to import drug paraphernalia, to wit, mannitol, in violation of 21 U.S.C. § 863(a)(3), 846; (2) multiple counts of importing drug paraphernalia, to wit, mannitol, in violation of 21 U.S.C. § 863(a)(3); (3) engaging in a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848(a); (4) multiple counts of selling drug paraphernalia, to wit, mannitol, in violation of 21 U.S.C. §863(a)(1); and (5) conspiracy to transport, transmit, and transfer and attempt to transport, transmit, and transfer a monetary instrument with the intent to promote unlawful activity, in violation of 18 U.S.C. §1956(a)(2)(A).

The Court sentenced John Anderson to 240 months for engaging in a CCE, and imposed lesser, concurrent sentences for his other convictions. Docket No. 377. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed all of Anderson's convictions, except for his conspiracy convictions. See United States v. Marshall, 332 F.3d 254 (4th Cir. 2003).[2] Pursuant to the Fourth Circuit's instructions, on remand, the Court entered an amended judgment, which vacated Anderson's convictions on Counts One and Two but did not otherwise alter his sentence. Docket No. 468.

Anderson filed a notice of appeal from the amended judgment, and on September 15, 2005, the Fourth Circuit granted the Government's motion to dismiss the appeal. Docket No. 523. The United States Supreme Court denied certiorari on January 23, 2006. See Anderson v. United States, 126 S. Ct. 1179 (2006). Anderson, therefore, had one year from January 23, 2006 in which to file a § 2255 Motion to Vacate. See United States v. Segers, 271 F.3d 181, 182-86

---

[2] The Fourth Circuit held that when a conspiracy is alleged as both a predicate violation of a CCE count and a separate count, a conviction on the separate count mergers with the CCE count. See id. at 263.

(4th Cir. 2001) (holding that one-year statute of limitations for filing a § 2255 motion begins to run when the Supreme Court denies the petition for writ of certiorari).

On January 19, 2007 (only four days shy of the expiration of the one-year limitations period), Anderson filed his § 2255 Motion to Vacate.[3] Docket No. 546. On February 13, 2007 (twenty-one days after the one-year period of limitations), Anderson filed a Motion to Amend his § 2255 petition and an amended Motion to Vacate.[4] Docket Nos. 549, 551.

## II.   Analysis

### A.   Untimely Claims

In his amended Motion, Anderson asserted that his appellate counsel, Mr. Neil Jacobs, Esquire, was ineffective for failing to raise several issues on appeal. See Docket No. 549. Because Anderson filed his amended Motion twenty-one days after the expiration of the one-year limitations period, the claims are untimely unless they relate back to his original Motion.

Under Rule 15(c) of the Federal Rules of Civil Procedure, relation back is permitted when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Fourth Circuit has explained that "[t]he fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c)." United States v. Pittman, 209 F.3d 314,

---

[3] Under Houston v. Lack, 487 U.S. 266 (1988), a prisoner's § 2255 motion is considered filed as of the date he delivers it to prison officials for mailing. See Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998).

[4] According to Anderson's notarized signature, he posted the amended Motion for mailing in the prison system on January 31, 2007, eight days past the one-year deadline following the Supreme Court's denial of certiorari on January 23, 2006. Because Anderson mailed his amended Motion directly to chambers, however, the Court returned the Motion to Anderson for proper filing on February 7, 2007. According to Anderson's signature, he posted the Motion for mailing to the Court on February 13, 2007, twenty-one days past the expiration date of the statute of limitations.

318 (4th Cir. 2000). To be timely, the new claims "must arise from the same set of facts [as the original claims], and the original motion must have put the government on notice of the theories asserted in the untimely filing." Anderson v. United States, 468 F. Supp. 2d 780, 784 (D. Md. 2007) (internal quotation marks omitted).

Anderson's original Motion addressed the representation of his trial counsel, Mr. Keating. The amended Motion did not attempt to clarify or supplement the claims in the original Motion. Rather, the amended Motion alleges that Anderson's appellate counsel was ineffective. The original Motion, therefore, did not put the government on notice that Anderson would raise these claims against Mr. Jacobs, and the new claims do not arise from the same set of facts because a trial and an appeal are separate occurrences of "both time and type." See Pittman, 209 F.3d at 318 (reasoning that a trial and sentencing are separate occurrences). Moreover, Anderson offers no explanation for why he did not raise these claims in his original Motion.

Accordingly, the claims that Anderson asserts in his amended Motion are time-barred.

**B.     Procedurally Defaulted Claims**

Anderson claims that his sentence should be vacated because the government violated the disclosure requirements set forth in Brady v. Maryland, 373 U.S. 83, 87 (1963). Because Anderson did not raise these claims on direct review, he has procedurally defaulted them. See Bousley v. United States, 523 U.S. 614, 621 (1998). Thus, Anderson can only raise these claims in habeas "if he can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001) (quoting Bousley, 523 U.S. at 622 (intentional citations omitted)).

4

Anderson has offered no explanation why these claims were not brought on direct review. Likewise, in light of the overwhelming evidence presented at trial, Anderson cannot make a showing of actual innocence. Accordingly, Anderson's <u>Brady</u> claims are dismissed.[5]

## C.   Remaining Claims

Putting aside his untimely and procedurally defaulted claims, Anderson is left with his ineffective assistance of counsel claims against his trial counsel, Mr. Anton Keating, Esquire. Ineffective assistance of counsel claims are evaluated under the <u>Strickland</u> two-prong test, which requires Anderson to show that (i) counsel's performance was deficient, and (ii) counsel's deficient performance prejudiced him. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To establish the first prong, Anderson must produce evidence that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." <u>Id.</u> As for the second prong, Anderson must show that but for his attorney's deficient performance, the result of the proceedings would have been different. <u>See id.</u> The Court can address either the prejudice or the effectiveness prong first, and if it finds that Anderson cannot satisfy one of the prongs, the Court's inquiry ends and the petition is dismissed. <u>Id.</u> at 697.

### 1.   Drug Paraphernalia Statutory Exemption

Anderson alleges that Mr. Keating was ineffective for failing to argue that his conduct fell within the drug paraphernalia statute's exemption provision. <u>See</u> 21 U.S.C. § 863(f)(1) ("This section shall not apply to . . . any person authorized by local, State, or Federal law to manufactures, possess, or distribute [drug paraphernalia] . . . ."). Anderson argues that his conduct falls within the exemption because he was licensed to engage in a retail business by the

---

[5] Anderson also claims that these violations entitle him to a new trial. A motion for a new trial must be filed within seven days of the verdict. Fed. R. Crim. P. 33(b). If it is grounded on newly discovered evidence, the motion must be filed within three years after the verdict. Fed. R. Crim. P. 33(b)(2). The jury reached its verdict in this case in 2000. Anderson filed his motion in 2007. Accordingly, Anderson's motion for a new trial is time-barred.

5

Baltimore City Zoning Board as well as the state of Maryland, and the United States Customs Service authorized him to import mannitol.[6]

Anderson's claim is without merit. He can point to no local, state, or Federal laws authorizing him to possess or distribute drug paraphernalia. Although the Customs Service did not prohibit Anderson from importing mannitol, a substance with numerous lawful applications, it did not give him permission to possess or distribute mannitol for use with narcotics.[7] Accordingly, there was no basis for Mr. Keating to argue that Anderson's conduct fell within the statute's exemption provision.

### 2.   Juror Misconduct

Anderson alleges that Mr. Keating was ineffective for failing to request that the Court voir dire the entire jury panel to determine whether it was biased. At trial, the Court addressed four incidents of juror misconduct: (1) Alternate Juror Number One overheard Juror Number One talk about her son's past "involvement with drugs" (Gov't Ex. 3, 170); (2) Alternate Juror Number One overheard Juror Number One make a reference to "fry them" (Id. 172); (3) Alternate Juror Number One overheard Juror Number Twelve proclaim that she was going to stop taking notes (Id. 171); and (4) Alternate Juror Number One overheard Juror Number Eleven comment that some of the government's witnesses "had the balls to plead guilty and not waste taxpayers' dollars" (Gov't Ex. 4, 2). The record demonstrates that Mr. Keating engaged in vigorous advocacy on behalf of Mr. Anderson with regard to any jury bias.

---

[6] The Fourth Circuit rejected a similar argument on appeal. Anderson contended that because the United States Customs Service approved his application to import mannitol, the doctrine of entrapment-by-estoppel barred his prosecution. The Fourth Circuit reasoned, however, that the Customs Service's failure to notify Anderson that the importation of mannitol is illegal if the mannitol is used as drug paraphernalia simply does not amount to active misleading, which is required to establish an entrapment-by-estoppel defense.

[7] To establish that Anderson sold the mannitol as drug paraphernalia, the government need only have proved that it was " 'primarily intended' for use with drugs by virtue of the circumstances of [its] display and sale." Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 521 (1994).

During the trial, the clerk alerted the Court to Alternate Juror Number One's concerns regarding the comments of Juror Number One and Juror Number Twelve. Gov't Ex 5, 2. In response, the Court voir dired Juror Number One and Alternate Number One. Id. 4, 195. Mr. Archangelo Tuminelli, Esquire, counsel for one of Anderson's co-defendants, represented the defendants in the voir dire, which took place at the bench.[8] Based on her answers, the Court struck Juror Number One. Id. 6-13, 195-204, 209.

The following day, counsel for both sides made extensive arguments regarding what Juror Number Twelve's statement and whether she should be voir dired. Gov't Ex. 6, 6-18. Additionally, Mr. Tuminelli requested that the Court voir dire the remaining eleven jurors if it chose not to seat Alternate Number One. Id. 13. Ultimately, the Court kept Juror Number Twelve and seated Alternate Number One. Id. 16. Following the Court's ruling, Mr. Tuminelli noted his objection for the record on behalf of all of the defendants. Id. 18-19.

One week later, the clerk alerted the Court to Alternate Juror Number One's concerns with Juror Number Eleven, who had expressed approval for the defendants who "had the balls to plead guilty and not waste taxpayers' dollars." Gov't Ex. 4, 2. The parties argued vigorously about the proper approach to Juror Number Eleven, including which, and how many, other jurors to question. Id. 13-20. Mr. Tuminelli, once again acting on behalf of all defense counsel, proposed that the Court strike Juror Number Eleven and not seat Alternate Juror Number Two. Id. 15. Mr. Tuminelli also offered that if the Court struck Juror Number Eleven, the defendants would decline to question the other jurors. Id. 18-19.

---

[8] The Court reasoned that "it probably would be easier for [the juror] and less intimidating with one counsel for the government and one from the defense [at the bench] and others listening." Id. 4-5. The Court also gave each of the other defense attorneys an opportunity to question the jurors. Id. 5.

Initially, the government rejected this proposal, and the Court voir dired Juror Number Eleven. Id. 20-21. Subsequently, the government agreed to Mr. Tuminelli's proposal (Id. 109). Accordingly, the Court struck Juror Number Eleven and did not seat Alternate Juror Number Two. Id.

Ultimately, the record shows that Mr. Keating's advocacy was well within the range of competence demanded of attorneys in criminal cases. See Strickland, 466 U.S. at 666. In concert with Mr. Keating and the other defense attorneys, Mr. Tuminelli questioned the jurors, attempted to persuade the Court of the merits of the defense's arguments, reached resolutions with the prosecution, and preserved issues for the record. In contrast to Anderson's allegations, Mr. Tuminelli asked the Court to voir dire the entire panel. Accordingly, Anderson's claim is denied.

### 3. Count Seventeen of the Indictment

Anderson alleges that Mr. Keating was ineffective because he failed to argue that Count Seventeen of the Indictment, the CCE count, was defective. The CCE count charged engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a). Under the CCE statute, the government must prove "a continuing series of violations" of the federal narcotics laws. See 21 U.S.C. § 848(c)(1), (2). Therefore, the CCE count in this case alleged and incorporated other predicate felony drug violations charged in the Indictment.[9]

---

[9] Count Seventeen identified the predicate violations as

> includ[ing] but not limited to, the violations alleged in Count One (Conspiracy to Sell Drug Paraphernalia and to Aid and Abet the Distribution and the Possession with Intent to Distribute a Controlled Substance, Count Two (Conspiracy to Import Drug Paraphernalia), Counts Three through Sixteen (Importation of Drug Paraphernalia), and Counts Eighteen through Twenty-Two (Sale of Drug Paraphernalia), which Counts are realleged and incorporated herein by reference.

Gov't Ex. 9, 19-20.

Anderson argues that the Indictment was defective because Count One, the conspiracy count and one of the predicate violations alleged in the CCE count, lists the allegations in Count Twenty-Three, the money laundering count, as one of the overt acts in furtherance of the conspiracy.[10] Under Anderson's theory, a juror might have mistakenly interpreted this reference to imply that the money laundering count could also be used as a predicate violation for the CCE count.

This argument is without merit. The plain language of the CCE count specifically only alleged and incorporated felony drug violations charged under Title 21. Likewise, the conspiracy count only referred to the money laundering violation as an overt act in further of the conspiracy. There is no reason to find that a juror would have assumed that money laundering was a predicate offense of the CCE count. Accordingly, Mr. Keating did not err by failing to object to Count Seventeen of the Indictment.

Even assuming that Mr. Keating erred, Anderson was not prejudiced. To establish prejudice, Anderson must prove that but for his attorney's deficient performance, the result of the proceedings would have been different. Strickland, 466 U.S. at 687. The jury found beyond a reasonable doubt that Anderson committed twenty-two predicate violations. See Gov't Ex. 2, 3-4 (special verdict sheet listing predicate violations). Disregarding the jury's possible consideration of Counts One and Two, the jury's findings on each of the remaining predicate acts

---

[10] In the excerpt provided by the government, Count One of the Indictment lists at least twenty overt acts in furtherance of the conspiracy, including:

> On numerous occasions, the dates and details of which are more fully set forth in Count Twenty-Three of this Indictment, and which allegations are incorporated as if fully set forth herein, JOHN DAVID ANDERSON, JR. . . . authorized wire transfers of money from Provident Bank from account number . . . to the Banco Di Sicilia . . . which account is in the name of Armando Battaglia Imp/Exp of Castlebuouno, Palermo, Italy.

Gov't Ex. 10, 144-45.

are more than sufficient to satisfy the requirements for conviction under the CCE statute. Accordingly, Anderson cannot show that he was prejudiced by Mr. Keating's failure to object to Count Seventeen of the Indictment.

### 4. Verdict Form

Anderson alleges that Mr. Keating was ineffective for failing to object to the verdict form, which he asserts was phrased in such a way that the jury's verdict on Count One might not have been unanimous.[11] Even assuming that the verdict form was defective, there would be no Strickland violation. Because the Court vacated his conviction on Count One, Anderson cannot make a showing that he was prejudiced by Mr. Keating's failure to object to the verdict form.

### 5. Identities of Underlings

Under the CCE statute, the government must prove that the defendant supervised "five or more persons." 21 U.S.C. § 848(c)(2)(A). Anderson argues that Mr. Keating erred in three respects with regard to the identities of the five persons that Anderson supervised. First, Anderson contends that Mr. Keating erred because he did not request a jury instruction requiring the jury to unanimously agree on the identities of the underlings. This theory is without merit because the jury need not have unanimously agreed on the five persons that Anderson supervised. See United States v. Stitt, 250 F.3d 878, 886 (4th Cir. 2001).

---

[11] Anderson contends that the verdict form was defective because it listed the objects of the conspiracy charged in Count One as "conspiracy to aid and abet the distribution or possession with the intent to distribute a controlled substance." Gov't Ex. 2, 1 (emphasis added). The Court previously addressed this verdict sheet in a § 2255 petition filed by one of Anderson's co-defendants. See Anderson v. United States, 468 F. Supp. 2d 780, 789-90 (D. Md. 2007).
There, the Court held that the verdict form was not improperly worded. Id. Moreover, the Court found that even if the verdict form was improperly worded, there would be no Strickland violation because the issue is so technical that no attorney would be deemed inadequate for failing to spot it and the Court repeatedly emphasized throughout its jury instructions that the jury's verdict must be unanimous. Id. The same analysis and findings are applicable to the pending motion.

Second, Anderson argues that Mr. Keating erred because he failed to investigate certain individuals. This theory is also without merit. Mr. Keating made adequate investigation of all of the relevant witnesses and defendants. According to his affidavit, which Anderson does not dispute on this issue, Mr. Keating "made a comprehensive list of all individuals involved who might hurt or help the Petitioner's case. I reviewed the names of everyone in the report with the Petitioner." Gov't Ex. 7, 2. Anderson does not allege that he provided any additional information to Mr. Keating. Thus, under these circumstances, Mr. Keating's representation was not deficient.

Third, Anderson complains that at trial the government improperly characterized as his subordinates individuals over whom he could not have exercised any supervisory authority. These individuals include Anderson's relatives, tenants, or customers. Anderson further contends that Keating was ineffective for failing to object to the government's mischaracterization.

This claim is without merit. The Court carefully instructed the jury that it "should give the words 'organizer', 'supervisor', or 'manager' their everyday ordinary meaning." Gov't Ex. 12, 57. The jury is presumed to have followed this instruction. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987) (discussing the basis for "[t]he rule that juries are presumed to follow their instructions"). Further, there was ample evidence that Anderson supervised at least five other people. Accordingly, Mr. Keating did not err in failing to object to the government's characterization of these individuals.

### 6. Jury Instruction on Elements of Conspiracy to Aid and Abet the Distribution of Drugs

Anderson alleges that because he "did nothing to aid and abet drug dealers" (P.'s Mot. 19), Mr. Keating erred by failing to object to the jury instruction on the elements of Count One,

11

conspiracy to aid and abet the distribution of drugs. Even assuming that Mr. Keating erred, there would be no Strickland violation. Because the Court vacated his conviction on Count One, Anderson cannot make a showing that he was prejudiced by Mr. Keating's failure to object to the the Court's instruction on the elements of Count One.

### 7. Plea Offer

Anderson alleges that Mr. Keating failed to communicate any plea offers to him. The failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance. See, e.g., United States v. Brannon, 48 Fed. Appx. 51, 54, 2002 WL 31236437, *2 (4th Cir. 2002) (unpublished); United States v. Blaylock, 20 F.3d 1458, 165-66 (9th Cir. 1994). If Anderson can show that the government offered a plea, that the sentence under the plea was less than the sentence ultimately imposed, and that he would have accepted the plea, Anderson may prevail. See Brannon, 48 Fed. Appx. at 53.

This issue cannot be resolved without a hearing. The state of the record is as follows.

In a sworn affidavit submitted in support of his motion, Anderson affies:

> Mr. Keating never informed me that the Prosecution had offered a plea bargain with a maximum sentence of fourteen years. I never saw a copy of the written plea bargain offer. And the prospect of a plea was never entertained. At no time and under no circumstances, did Mr. Keating advise that I should enter into a plea agreement with the Government. . . . [Had] I known of a plea bargain offer with a maximum sentence of fourteen years, I definitely would have entered the plea.

Pet. 32. Anderson also submitted a 2004 letter from Mr. Keating to the Attorney Grievance Commission of Maryland, in which Mr. Keating wrote that "Mr. Anderson was offered a guilty plea for a maximum incarceration of fourteen years. He refused my advice to take the plea." Pet. Ex. 6, 2 (emphasis added).

On behalf of the government, Assistant United States Attorney Martin Clarke avers that

> It is the government's memory that the only plea offer made to Anderson was the same as the one made to his codefendant Ouaffai, which was to plead to Count Seventeen and face a mandatory minimum sentence of twenty years imprisonment. Ouaffai elected to plead guilty, the defendant did not.

Gov't Resp. 41-42.

In an affidavit submitted by the government, Mr. Keating avers that

> At no time did I say to [Anderson] that we could win the case, in fact all counsel for the Defendants wanted them to plead guilty and several discussions to that effect were held. When I communicated the plea to Defendant Anderson, he rejected the terms as being too harsh.

Gov't Ex. 7, 2.

Accordingly, an evidentiary hearing is necessary to resolve this claim.

### III. Conclusion

For the foregoing reasons, the Court will, by separate order of even date, GRANT a hearing to determine whether Mr. Keating provided ineffective assistance with regard to a possible guilty plea, APPOINT counsel for Anderson, and DENY the remaining claims.

Dated this 16 day of November, 2009.

Benson Everett Legg
Chief Judge